IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

JUANTEZ EDWARD TENNYSON,              )
                                      )
                      Petitioner      )
                                      )
        vs.                           )       Civil Action No. 09-1216
                                      )       Chief U.S. Magistrate Judge Lisa Pupo Lenihan
MICHAEL KLOPOTOSKI; THE               )
ATTORNEY GENERAL OF THE STATE         )
OF PENNSYLVANIA; and THE              )
DISTRICT ATTORNEY OF                  )
ALLEGHENY COUNTY,                     )
                                      )
                      Respondents     )


## MEMORANDUM OPINION AND ORDER

Juantez Edward Tennyson ("Petitioner"), a state prisoner, was convicted by a jury trial of

first degree murder in the shooting of a fellow bar patron, during a bar fight.  He was also

convicted of aggravated assault in the shooting of another bar patron, a friend of the first victim,

during the same fight.  Petitioner has filed a federal habeas petition pursuant to 28 U.S.C. § 2254,

attacking his convictions.  Petitioner raises a whole host of claims.  Because we find that the

State Courts rejected most of his claims on the merits, and because Petitioner fails to show that

the State Courts' disposition of his claims was contrary to or an unreasonable application of

United States Supreme Court precedent, those claims cannot afford Petitioner relief.   The

remaining claims that were not addressed by the State Courts have been procedurally defaulted

and cannot serve as a basis for relief.

### A.  Petitioner's Claims

Petitioner raises the following issues in his habeas petition:

I) The petitioner's right to due process under the United States Constitution was
violated due to:

(A) An alternate juror was who was a relative of the murder victim and knew members of the victim's family and only after sitting on the case for two (2) days with this knowledge did [the alternate] juror inform the court staff of possible prejudice and bias; this relationship between the victim's family member and [the alternate] juror is so prejudicial that it deprived petitioner of due process rights and equal protection of the law and [constituted] a clear violation of the United States Constitution Amendments 5th, 14th and 6th.

[ECF No. 2 at 21].

(B) The Petitioner's right to Due process under the United States Constitution was violated due to an Ex parte communication [i.e., an in-chambers hearing] between the judge, [the alternate] juror, and defense counsel and district attorney without [the] defendant [being] present and "no" record was made of [the in-chambers] hearing [on whether to remove the alternate juror].

[ECF No. 2 at 23 to 24].

II) The Petitioner's right to Due Process under the United States Constitution was violated due to the fact that [the] Comm[onwealth] failed to prove the defendant acted with specific intent to kill.

[ECF No. 2 at 25].

III) The Petitioner's right to Due Process under [the] Untied [sic] States Constitution was violated due to the fact that [the] Comm[onwealth] failed to disprove the defense of imperfect self-defense beyond a reasonable doubt.

[ECF No. 2 at 26].

IV) The Petitioner's right to due process under the Untied [sic] States Constitution was violated due to the fact that, the Comm[onwealth] failed to disprove the defense of voluntary intoxication beyond a reasonable doubt.

[ECF No. 2 at 28].

V) The Petitioner's right to due Process under the United States Constitution was violated due to, the verdict was against the weight of the evidence.

[ECF No. 2 at 30].

VI) The Petitioner's right to due Process under the United States Constitution was violated due to the fact that the Comm[onwealth] failed to sustain its burden of proof that petitioner is guilty of 1st degree murder.

[ECF No. 2 at 31-32].

VII) Petitioner's 6th Amendment rights under the United States Constitution were violated because Trial counsel was ineffective for not calling Ms. L. Green to testify at trial, because she was an eyewitness who seen [sic] the victim start the altercation, be the aggressor, and reach under [his] shirt (like reaching for a weapon). Also Ms. L. Green gave [a] statement to trial counsel and came to trial to testify for petitioner but was never called by trial counsel. Ms. L Green['s proposed] testimony goes to the heart of petitioner's self-defense claim.

[ECF No. 2 at 35].

VIII) The Petitioner's 6th Amendment rights under the United States Constitution were violated because trial counsel was ineffective for failing to secure petitioner's presence in [the] Judge['s] chambers at [the] hearing between the Judge, DA., and trial counsel for potential bias of [the] alternate juror who was a relative of [the] victim and was dismissed because of prejudice.

[ECF No. 2 at 36 to 37].

IX) The Petitioner's 6th Amendment rights under the United States Constitution were violated because trial counsel was ineffective for failing to ask for a mistrial after the in[-the-]judge['s-]chambers Hearing was held, Juror informed trial counsel, [the] Judge, and DA that, "He was a relative of murder victim.["] Alternate Juror was dismissed because of this relationship and bias towards petitioner.

[ECF No. 2 at 37 to 38].

## B.   AEDPA is applicable

The Antiterrorism and Effective Death Penalty Act of 1996, Pub. L. No. 104-132, tit. I, §101 (1996) (AEDPA) which amended the standards for reviewing State court judgments in federal habeas petitions filed under 28 U.S.C. § 2254 was effective April 24, 1996. Because petitioner's habeas petition was filed in the year 2009, AEDPA is applicable to this case. Werts v. Vaughn, 228 F.3d 178, 195 (3d Cir. 2000).

Where the State courts have reviewed a federal issue presented to them and disposed of the issue on the merits, and that issue is also raised in a federal habeas petition, AEDPA provides the applicable deferential standards by which the federal habeas court is to review the State courts' disposition of that issue. <u>See</u> 28 U.S.C. § 2254(d) and (e). In order to merit habeas relief, AEDPA places the burden on Petitioner to show that the State Courts' adjudication of his claims was contrary to or an unreasonable application of then-extant United States Supreme Court precedent or, in the alternative to show that the State Courts' factual determination were unreasonable. <u>Williams v. Taylor</u>, 529 U.S. 362 (2000).

**C. Discussion**

Initially, we note that, at the trial, Petitioner took the stand in his own defense and recounted his version of the events, including the following: that he had been drinking, that the victim started the altercation, that when the victim was going to the bathroom and had reached the top of the steps leading to the bathroom, Petitioner saw the victim allegedly reaching under his shirt as if going for a gun and that is when Petitioner grabbed his gun, which went off, but not intentionally, and that is when the victim jumped on Petitioner and they engaged in a fight to gain control over the gun when shots went off that killed the victim and wounded the victim's inebriated friend who had tried to help the victim. State Court Record, Trial Transcript, ("SCR T.T.") at 394 to 399. The jury apparently did not credit Petitioner's version of the events and convicted him of first degree murder. In addition, at trial, Petitioner called an expert who testified that Petitioner would have been so impaired due to his drinking at the bar and his earlier smoking of marijuana, that Petitioner could not have formed the intent necessary to constitute first degree murder. SCR, T.T. at 420 to 432; 432, lines 8 to 12 ("this amount of alcohol [ingested by Petitioner on the night of the homicide] would have substantially impaired his

ability to form specific homicidal intent and to be fully conscious of that intent.").   Again, the jury apparently did not credit such expert testimony, finding Petitioner guilty of first degree murder and instead credited the testimony of the bar maid who testified that she had many years of experience as a bar maid and that she did not judge Petitioner to be intoxicated that night. SCR, T.T. at 159, lines 12 to 20 (describing Petitioner's condition at the time of the start of the confrontation as being "all right").

We take up first, Petitioner's claims of insufficiency of the evidence in its many incarnations, i.e., Claims II, III, IV, and VI, because doing so provides familiarity with the facts of the case. Petitioner did raise before the State Courts, in his Statement of Matters Complained of on Appeal, a claim that there was insufficient evidence to support the verdict of first degree murder.   Specifically, Petitioner argued that

> There was insufficient evidence to support the verdict of first degree murder.  In addition, the Commonwealth failed to disprove that Mr. Tennyson acted in self-defense or that the failed to act in the heat of passion or that he acted out of a mistaken belief or justification/self-defense or that his intoxication reduced the crime to third degree murder or that it. [sic]

ECF No. 13-2 at 63, ¶ 2.

The Trial Court, in its opinion, addressed these claims as follows:

> Tennyson's initial assertions on appeal that the verdict was against the weight of the evidence and that there was insufficient evidence to support a verdict of first degree murder, simply ignore the record in this case.  The standard by which to evaluate such an allegation is well-settled. Specifically, if the evidence submitted at trial, viewed in the light most favorable to the Commonwealth as the verdict winner establishes each element of the offense as charged beyond a reasonable doubt, the verdict of the jury must not be disturbed. ***Commonwealth v. Fletcher,*** **561 Pa. 266, 750 A.2d 261 (2000),** ***cert. denied,*** **121 S.Ct. 623 (200).**
> In this case, the evidence overwhelmingly supports not only the first degree murder conviction of Tennyson but, also, the other charges for which he was convicted. It must be emphasized that no defense was presented to the Commonwealth's evidence of a firearm violation.  Clearly, Tennyson was carrying a handgun without a license, and carried a loaded weapon into a social

setting when Tennyson had neither been specifically threatened nor placed in any danger prior to entering the bar. It was apparent at trial that Tennyson entered the bar with some type of general ill will toward other human beings and this was clearly evident with respect to his initiation of the confrontation with Terry, [the victim, whom Petitioner shot to death] and his approach generally to a non-threatening situation. Additionally, it was obvious during the trial that Tennyson attempted to be a "tough guy" in an effort to make him more desirable to a woman with whom he was engaged in a conversation [i.e., Ms. L. Green]. Tennyson's statement to Terry, a person much larger than himself, indicates that not only was Tennyson in a state of mind to initiate a fight, with the courage of his firearm in his possession, but that Tennyson had the specific intent to kill Terry since, on more than one occasion, he stated that Terry was not going home that evening, clearly an indication that Tennyson planned on killing Terry. To support a conviction of first degree murder, the Commonwealth had to show that Terry was dead, that Tennyson was the cause of that death and that Tennyson had the specific intent to kill Terry with malice. While Tennyson's initial aim certainly left something to be desired, the mere fact that Tennyson pointed his firearm at Terry while Terry was walking away from him and fired, unprovoked, is enough to support the specific intent necessary for a first degree murder conviction. As set forth above, however, the evidence in this case is much stronger against Tennyson and his arguments on appeal with respect to the evidence in this case are simply without merit.

Likewise, Tennyson's arguments on appeal relating to his defenses are also without merit. Specifically, Tennyson's proffered arguments relating to self-defense, heat of passion, mistaken believe of justification and voluntary intoxication were all issues which Tennyson was permitted to place into evidence and these facts or arguments were available to the jury for its consideration. The evidence in the case indicates that the jury could easily find, and in fact found, that the Commonwealth proved its case beyond a reasonable doubt and disproved Tennyson's affirmative defenses also beyond a reasonable doubt. Tennyson's argument relating to his defenses is simply a restatement of his evidentiary argument set forth above. Restated, the evidence in this case, viewed most favorably to the Commonwealth as verdict-winner, supports the proposition that the Commonwealth proved beyond a reasonable doubt every element necessary to sustain Tennyson's conviction of first degree murder.

ECF No. 13-1 at 45 to 47. The Superior Court adopted the opinion of the Trial Court as its own in its disposition of Petitioner's direct appeal to the Superior Court.[1] We find that the foregoing reasoning of the Trial Court disposes of Petitioner's claims raised in the habeas petition, which

---

[1] "The claims of error are without merit. We affirm based on the opinion of Judge Cashman, which ably discusses the issues. A copy of Judge Cashman's opinion is attached." ECF No. 13-3 at 3, Superior Court slip op.

are enumerated above, as Claims Numbered II, III, IV, and VI. Taking the foregoing reasoning of the Trial Court, together with the evidence, which was given at Petitioner's trial and summarized by the Respondents in their Answer, ECF No. 13 at 5 to 10, Petitioner has not carried his burden to demonstrate that the foregoing reasoning of the Trial Court, which was adopted by the Superior Court, was contrary to or an unreasonable application of then extant Supreme Court law. Nor has Petitioner established, as is his burden, that the Trial Court's opinion was an unreasonable determination of the facts in light of the evidence presented. Accordingly, these issues, Numbered II, III, IV, and VI, do not merit relief.

Next, we take up Petitioner's closely related claim that the verdict was against the weight of the evidence. In contrast to Petitioner's challenge to the sufficiency of the evidence to sustain his first degree murder conviction, Petitioner's challenge to the weight of the evidence, necessarily "concedes that there is sufficient evidence to sustain the verdict. . . . An allegation that the verdict is against the weight of the evidence is addressed to the discretion of the trial court.... [T]he role of the trial judge is to determine that notwithstanding all the facts, certain facts are so clearly of greater weight that to ignore them or to give them equal weight with all the facts is to deny justice." Rainey v. Varner, 603 F.3d 189, 199 (3d Cir. 2010) (*quoting*, Common-wealth v. Widmer, 744 A.2d 745, 751-52 (Pa. 2000)), *petition for cert. filed*, 79 U.S.LW 3228 (U.S. Sept. 23, 2010)(No. 10-431). Such a "weight of the evidence" claim is simply not cognizable by a federal court, entertaining a habeas petition from a State prisoner. Young v. Kemp, 760 F.2d 1097, 1105 (11th Cir. 1985)("A federal habeas court has no power to grant habeas corpus relief because it finds that the state conviction is against the 'weight' of the evidence"); McKinnon v. Superintendent, Great Meadow Correctional Facility, 355 F.App'x 469, 475 (2d Cir. 2009) ("the argument that a verdict is against the weight of the evidence states

a claim under state law, which is not cognizable on habeas corpus"); Davis v. Lavan, NO. CIV.03-40211, 2004 WL 2166283, at *9 (E.D. Pa. Sept. 23, 2004)("a claim that a verdict is against the weight of the evidence is not cognizable on habeas review because it requires an assessment of the credibility of the evidence presented at trial, and a state court's credibility determinations are binding on a federal habeas court."). Accordingly, this claim does not afford Petitioner relief.

Next, we address the issue of the presence of the alternate juror. Petitioner presents this claim as follows:

> A) An alternate juror was who was a relative of the murder victim and knew members of the victim's family and only after sitting on the case for two (2) days with this knowledge did [the alternate] juror inform the court staff of possible prejudice and bias; this relationship between the victim's family member and [the alternate] juror is so prejudicial that it deprived petitioner of due process rights and equal protection of the law and [constituted] a clear violation of the United States Constitution Amendments 5th, 14th and 6th.

ECF No. 2 at 21. Petitioner claims before this court that one of the two alternate jurors was a relative of the murder victim and was permitted to sit with the jury, hearing evidence for the first two days of Petitioner's trial, before the alternate juror alerted the Court's tipstaff to the situation. The trouble with this claim is that the claim was never presented to the trial court nor to the Superior Court on direct appeal,[2] and so it was waived under Pennsylvania law.[3]

---

[2] In his direct appeal to the Superior Court, following his conviction, the only issues raised were as follows:

> I. THE COMMONWEALTH FAILED TO SUSTAIN ITS BURDEN OF PROOF THAT JUANTEZ TENNYSON IS GUILTY OF FIRST DEGREE MURDER . . . .
>
> A. The Commonwealth failed to prove the Defendant acted with specific intent to kill. . . .
> B. The Commonwealth failed to disprove the defense of voluntary intoxication beyond a reasonable doubt.
> C. The Commonwealth failed to disprove the defense of imperfect self-defense beyond a reasonable doubt.

Accordingly, the only way it was cognizable before the State Courts was as a claim of ineffectiveness of trial and/or direct appeal counsel. Indeed, this is precisely how the claim was raised in the State Courts as one of layered ineffective assistance, i.e. direct appeal counsel was ineffective for failing to raise the issue of trial counsel's ineffectiveness for failing to request a mistrial based on the presence of the alternate juror and his relationship to the victim's family/witness. See, e.g., ECF No. 13-6 at 7, Superior Court brief on appeal of the PCRA decision ("1. Did the lower Court err when it dismissed Appellant's amended petition for post-

---

II. THE TRIAL COURT ERRED WHEN IT FAILED TO GRANT DEFENDANT'S POST TRIAL MOTION THAT THE VERDICT WAS AGAINST THE WEIGHT OF THE EVIDENCE.

III. WHEN THE ACCUSED PRESENTS ALTERNATIVE DEFENSES OF SELF DEFENSE AND UNREASONABLE BELIEF VOLUNTARY MANSLAUGHTER, THE TRIAL COURT ERRS BY FAILING TO EXPLAIN TO THE JURY THE RELATIONSHIP BETWEEN THOSE DEFENSES AND TRIAL COUNSEL RENDERS INEFFECTIVE ASSISTANCE BY FAILING TO OBJECT TO THE ERRONEOUS AND INADEQUATE INSTRUCTION. . . .

A. The instruction failed to inform the jury that if the defendant subjectively believed that he was facing imminent death or serious bodily injury and any of the requirements necessary to excuse the act on the ground of self defense is not made out, the killing is voluntary manslaughter . . . .
B. Trial counsel rendered ineffective assistance by failing to object to the fatally erroneous charge and to request a more specific instruction. . . .

ECF No. 13-2 at 2 to 3.

[3] While, later in the PCRA proceedings, Petitioner raised an ineffective assistance of counsel claim in regards to the alternate juror issue, which ineffectiveness claim, we address below, an ineffectiveness claim and the underlying claim (i.e., the alternate juror claim of fundamental unfairness) are two distinct claims, such that raising one does not raise the other. See, e.g., Rose v. Palmateer, 395 F.3d 1108, 1112 (9th Cir. 2005) (petitioner's claim that counsel was ineffective in failing to raise alleged Fifth Amendment violation did not fairly present underlying claim of Fifth Amendment violation as such claim, although related, was distinct and had separate elements of proof, and should have been separately and specifically presented to state court).

conviction relief for ineffectiveness of trial counsel for failing to request a mistrial when trial

counsel knew or should have known that the [alternate] juror who was seated knew or was

related to the victim's family?"). See also ECF No. 13-6 at 20 to 23 (referencing claim of layered

ineffective assistance of appellate counsel for failure to raise trial counsel's ineffectiveness).

Hence, the underlying issue of the fundamental fairness of permitting an alternate juror who had

some familiarity with the victim or the victim's family/witness was waived by both trial and

appellate counsel under State law.[4]  Moreover, given the one year statute of limitations for filing

PCRA petitions, Petitioner cannot now raise the claim in State Court.[5]  Accordingly, this

underlying issue is procedurally defaulted and cannot form the basis of relief here, unless

Petitioner can demonstrate either cause and prejudice or a miscarriage of justice in order to

excuse the procedural default and have the underlying fundamental unfairness claim addressed

on the merits.  Edwards v. Carpenter, 529 U.S. 446, 451 (2000).

To satisfy the cause and prejudice requirement, Petitioner must demonstrate that some

objective factor external to the defense impeded his efforts to raise the claim in State Court.

McCleskey v. Zant, 499 U.S. 467, 493 (1991); Murray v. Carrier, 477 U.S. 478, 488 (1986).

While ineffective assistance of counsel may constitute cause for such a default, neither a

deliberate strategic decision nor an inadvertent failure of counsel to raise an issue constitutes

---

[4] See, e.g., Barrett v. Patrick, NO. CIVA 05-370J, 2006 WL 2077019, at *6 n.7 (W.D.Pa., July 24, 2006) ("Pennsylvania applies a rule of waiver in multiple contexts. An issue not raised at trial or on appeal is waived. Moreover, Pennsylvania's rule of waiver for failing to raise an issue on appeal is 'independent' of any federal law question.") (citations omitted); Abbott v. Gigliotti, No. 08-1310, 2010 WL 411830, at *3 (W.D.Pa. Jan. 28, 2010) (same);

[5] Driver v. Beard,  CIV.A 09-4444, 2010 WL 3655897, at *24 (E.D.Pa., Aug. 11, 2010) ("the PCRA's one-year statute of limitations which prevents petitioner from filing a PCRA petition at this point in time, 42 Pa. Cons.Stat. Ann. § 9545(b)(1), also is an adequate and independent ground for precluding federal habeas review."), report and recommendation adopted by, 2010 WL 3655896 (E.D.Pa. Sept 20, 2010).

"cause" unless counsel's performance failed to meet the Sixth Amendment standard for competent assistance. Engle v. Isaac, 456 U.S. 107 (1982); Carrier, 477 U.S. at 485-87.

Here, Petitioner might have a claim of cause for the procedural default. Namely, the alleged ineffectiveness of direct appeal counsel for failing to raise the ineffectiveness of trial counsel for failing to request a mistrial. This is exactly the way the issue was presented in Petitioner's PCRA appeal. See, e.g., ECF No. 13-6 at 20 to 23 (referencing claim of layered ineffective assistance of appellate counsel for failure to raise trial counsel's ineffectiveness). However, we find that Petitioner has not met his burden to establish cause, because he has not established the lack of a reasonable appellate strategy in not including this issue as one of the issues to be raised on direct appeal.

Petitioner's direct appellate counsel testified at the PCRA hearing as follows: she stated that she reviewed the trial transcript when originally looking for issues to raise on appeal. She stated that when she drafted her Statement of Matters Complained of On Appeal, she was not aware of the issue of the alternate juror. She stated that after she talked with Petitioner's PCRA counsel (in preparation for her testimony at the PCRA hearing) about the issue, she went back to the transcript and found a paragraph that mentioned the alternate juror issues. Upon reading the paragraph, she felt that the issue had been resolved and determined that this was the reason why she did not pursue the issue in her direct appeal. Petitioner took the stand at the PCRA hearing, and disputed this, stating that he raised this issue with her over the phone during conversations about his direct appeal. Petitioner testified that he pressed his direct appellate counsel to include this issue in the appeal but she did not. The appellate counsel testified that she felt the issue of the alternate juror was adequately resolved by the alternate juror's removal.[6]

_____

[6] We take this from the original State Court Record that was sent to this Court and that included the PCRA hearing transcript, dated February 1, 2005.

Moreover, the basis of the alleged ineffectiveness of appellate counsel was that she did not raise the alleged ineffectiveness of trial counsel for failing to request a mistrial based upon the presence of this alternate juror. ECF No. 13-6 at 20 to 23. However, trial counsel also testified at the PCRA hearing and testified that he discussed with Petitioner the issue of whether Petitioner wanted a mistrial and trial counsel stated that Petitioner indicated that he did not want to request a mistrial. While counsel was not constitutionally obliged to follow his client's wishes to not request a mistrial,[7] we cannot say that trial counsel was ineffective for doing so. We note that Petitioner testified to the contrary at the PCRA hearing, alleging that he told his trial counsel that he wanted a mistrial. Petitioner also testified that he told his appellate counsel he wanted the issue of the alternate juror raised but that appellate counsel did not do so. However, the State Courts apparently rejected Petitioner's testimony.

The Superior Court rejected the contention that trial counsel was ineffective for failing to request a mistrial, reasoning as follows:

> At the PCRA hearing, trial counsel testified that after the issue involving the alternate juror came up, he discussed the situation with Tennyson, and trial counsel told Tennyson that he could request a mistrial. (N.T. PCRA Hearing, 2/1/05 at 6). He also told Tennyson that a mistrial was not guaranteed if requested, and that if a mistrial was granted, a new jury would be selected. (**Id**. at 6-8). Counsel stated that although he was willing to request a mistrial, he did not do so because Tennyson asked him "whether we could just stay with this [jury]." (**Id**. at 7-9). Because we will not deem counsel ineffective for complying

---

[7]  United States v. Allick, 386 F.App'x 100 (3d Cir. 2010) (the decision to request or consent to mistrial when jurors indicated their inability to agree upon verdict was strategic decision that ultimately rested with defense counsel, and defendants did not have to be present when matter was broached during in-chambers conference; rather, defense counsel had authority to decide whether to seek or oppose mistrial outside defendants' presence and without first consulting with defendants), *cert. den.,* 2011 WL 134569 (U.S. Jan. 18, 2011); United States v. Chapman, 593 F.3d 365, 368 (4th Cir. 2010) ("We likewise conclude that decisions regarding a mistrial are tactical decisions entrusted to the sound judgment of counsel, not the client."), *cert. den.,* 2011 WL 55396 (U.S. Jan. 10, 2011).

with his client's wishes, Tennyson's first claim must fail. ***Commonwealth v. Appel***, 689 A.2d 891 (Pa. 1997).[2]

      In addition, Tennyson failed to show that he was prejudiced in any way by trial counsel's decision. . . . Accordingly, even if Tennyson had not specifically told counsel that he wanted to keep the jury already empaneled, his claim would still fall given the lack of prejudice.

------

[2] We note that at the PCRA hearing Tennyson testified that he directed trial counsel to request a mistrial and that counsel's testimony to the contrary was false. (N.T. PCRA Hearing, 2/1/05, at 15-17). However, the trial court credited trial counsel's testimony, and we are bound by its credibility determination because it is supported by the record. . . . .

ECF No. 13-6 at 38.[8] We agree with the State Courts and we find that Appellate Counsel was

not ineffective for failing to raise trial counsel's alleged ineffectiveness on appeal because such a

claim was, as the State Courts found, meritless and appellate counsel cannot be deemed

------

[8] Nor does Petitioner carry his burden to show that the State Court's determination of this ineffective assistance of counsel claim was contrary to, or an unreasonable application of then extant Supreme Court precedent. Cf. Schriro v. Landrigan, 550 U.S. 465 (2007) (counsel in a capital case cannot be deemed ineffective for failing to present evidence of mitigation during the sentencing phase when the client objects); Taylor v. Horn, 504 F.3d 416, 455 (3d Cir. 2007) (same).

      In addition, Petitioner's argument that in cases where there is a biased juror, prejudice is presumed, ECF No. 2 at 21, and his implicit argument that the State Courts' finding of no prejudice due to the presence of the biased juror is error (since prejudice must be presumed) misses the mark. See ECF No. 2 at 41. Even if, for the sake of argument, we accepted the contention that in cases where there is a "biased juror," prejudice is presumed for purposes of analyzing the claim of fundamental fairness in such cases, here, in Petitioner's case, the claim that the State Courts adjudicated was **not** the Fourteenth Amendment fundamental fairness claim but the Sixth Amendment ineffective assistance of counsel claim and under such a Sixth Amendment analysis, the petitioner most certainly bears the burden of showing prejudice even if courts presume prejudice when analyzing the underlying claim. See Torres v. Thaler, __ F.App'x __, __ , 2010 WL 3681021, at * (5th Cir. 2010)("We refused to 'hold that a structural error [i.e., one where prejudice is presumed] alone is sufficient to warrant a presumption of prejudice in the ineffective assistance of counsel context'"), *petition for cert. filed*, (Dec. 13, 2010) (NO. 10-7972); Purvis v. Crosby, 451 F.3d 734, 743 (11th Cir. 2006) ("prejudice may not be presumed but must be shown in order to establish ineffective assistance of counsel based on the failure to raise a claim of structural error at trial. For the same reasons that prejudice cannot be presumed in order to satisfy the prejudice requirement when an objection to structural error was not made at trial, it cannot be presumed to satisfy the prejudice component of an ineffective assistance claim arising from the same failure to preserve the structural error."); Ward v. Hinsley, 377 F.3d 719, 726 (7th Cir. 2004). Thus, there was no error in the State Courts requiring Petitioner to show prejudice in his Sixth Amendment claim.

ineffective for failing to raise a meritless claim. Werts v. Vaughn, 228 F.3d 178, 202 (3d Cir. 2000) .

Accordingly, we find that Petitioner has not met his burden to show cause and prejudice so as to excuse his procedural default of this fundamental unfairness claim.  Hence, unless he can show a miscarriage of justice, should this court not address his underlying claim of fundamental unfairness regarding the alternate juror issue, then the claim cannot serve as a ground for relief.

In Werts v. Vaughn, 228 F.3d at 202, the Court explained the miscarriage of justice exception as follows:

> if the petitioner fails to demonstrate cause and prejudice for the default, the federal habeas court may still review an otherwise procedurally defaulted claim upon a showing that failure to review the federal habeas claim will result in a "miscarriage of justice." Generally, this exception will apply only in extraordinary cases, i.e., "where a constitutional violation has probably resulted in the conviction of one who is actually innocent...." [*Murray v. Carrier*, 477 U.S. 478] at 496 [(1986)].  Thus, to establish a miscarriage of justice, the petitioner must prove that it is more likely than not that no reasonable juror would have convicted him. *Schlup v. Delo*, 513 U.S. 298, 326 (1995).

There is no new evidence of Petitioner's actual innocence, as is required, in order for a state habeas petitioner to establish a miscarriage of justice so as to overcome a procedural default. Amrine v. Bowersox, 238 F.3d 1023, 1029 (8th Cir. 2001); Hubbard v. Pinchak, 378 F.3d 333, 340 (3d Cir. 2004).  Petitioner can not, on this record, establish a miscarriage of justice as it is clear that he shot the victim and we have already found sufficient evidence of intent so as to qualify the killing as being first degree murder.  Because Petitioner is not "actually innocent" of the first degree murder, he has not carried his burden to show a miscarriage of justice. Accordingly, the underlying claim that his trial was rendered fundamentally unfair in violation of

the substantive due process clause due to the presence of the alternate juror was procedurally defaulted and cannot form the basis of relief here.[9]

However, the claimed ineffectiveness of appellate counsel for failing to raise the alleged ineffectiveness of trial counsel for failing to object to the alternate juror and/or to request a mistrial was not procedurally defaulted and is presented by Petitioner to this Court in his Claim Number IX. From the foregoing analysis of cause and prejudice above, regarding the procedural default of the underlying alternate juror issue, it should be readily apparent that Petitioner has failed to show that the State Courts' adjudication of his claimed ineffectiveness of appellate and trial counsel regarding the alternate juror was contrary to or an unreasonable application of then extant Supreme Court precedent. Nor do we find that the State Courts' adjudication of this claim amounted to such. Neither has Petitioner established that the State Courts' determination of the facts was an unreasonable determination of the facts in light of the record presented. Hence, Claim Number IX does not afford Petitioner relief.

Next we take up the claim that Petitioner's right to due process was violated because he was allegedly not present at the in-chambers hearing held on the issue of the alternate juror, which is the issue enumerated above as I (B). For all of the same reasons that we found Issue I(A) procedurally defaulted, we find Issue 1(B) procedurally defaulted. Petitioner never

---

[9] We also reject Petitioner's unsupported contention that the alternate juror lied during voir dire about his relationship with the victim. See, e.g., ECF No. 2 at 23. From this Court's review of the case, it appears that what actually transpired is that the alternate juror was unaware of any relationship to the victim and/or to potential witnesses proposed by the Petitioner until at some point, the alternate juror recognized the relative and then at that time alerted the court tipstaff. In any event, the record is silent as to the alternate juror having committed any lies and a silent record in habeas redounds to Petitioner's detriment. Higgason v. Clark, 984 F.2d 203, 208 (7th Cir. 1993) ("On collateral attack, a silent record supports the judgment; the state receives the benefit of a presumption of regularity and all reasonable inferences. . . . His [i.e., habeas Petitioner's] entire position depends on persuading us that all gaps and ambiguities in the record count against the state. Judgments are presumed valid, however, and *Parke* emphasizes that one who seeks collateral relief bears a heavy burden.").

presented this issue of due process violation before either the trial court or the Superior Court on direct appeal. Hence, the issue was waived under State law and is procedurally defaulted under federal habeas law.

Similar to Issue I (A), Petitioner did raise a related ineffective assistance of counsel claim, in the State Courts. Namely, in his PCRA proceedings, Petitioner raised the issue: "Was trial counsel ineffective by failing to have the Appellant present during the conference to excuse the above mentioned [alternate] juror?" ECF No. 2 at 23 - 24. He raises this claim before this Court as well. ECF No. 2 at 36-37 ("The Petitioner's 6th Amendment rights under the United States Constitution were violated because trial counsel was ineffective for failing to secure petitioner's presence in [the] Judge['s] chambers at [the] hearing between the Judge, DA., and trial counsel for potential bias of [the] alternative juror who was a relative of [the] victim and was dismissed because of prejudice.").

The State Courts addressed this issue as follows:

> Tennyson's second contention of error was that he was not present at the time that the information from the juror was given to the Court indicating that the juror had some type of relationship with either the victim or a potential witness. While there is no record of this particular proceeding, this Court's recollection is that Tennyson, his counsel and the district attorney were present with the juror at the time that the juror explained his concerns and identified his possible relationship with the victim or a potential witness. In light of that particular relationship, it was clear that the juror would not be permitted to serve on Tennyson's case, and accordingly, that juror was removed.
> . . . .
> Tennyson has predicated his current claims of error not on one of the twelve jurors who rendered the verdicts in this case but, rather, on an alternate juror. This juror was never part of the jury deliberation process, nor did Tennyson ever present any information that would indicate that the juror had disclosed his potential relationship with the victim or the witness to his fellow jurors. This Court, in its preliminary instructions to the jurors, told them that they were not to speak to anyone about this case, including their fellow jurors. **Trial Transcript, page 112**. There is no evidence in the record that suggested that the jury ignored that instruction and it is a fundamental assumption of our jury system that a jury will follow instructions by a Trial Judge. ***Marshall v. Lonberger, 459 U.S. 422,***

> ***103 S.Ct. 843 (1983).*** These observations concerning the jury underscore the
> fundamental problem of Tennyson's current contentions and, that is, he has failed
> to demonstrate any prejudice that may have befallen him since the juror who was
> the predicate for his argument was an alternate juror who did not participate in the
> trial nor in the deliberations concerning his verdict. ***Commonwealth v. Griffin,***
> ***537 Pa. 447, 644 A.2d 1167 (1994).*** Since this juror did not deliberate, no
> prejudice could have befallen Tennyson and, accordingly, none of this claims [of
> ineffective assistance of counsel] have merit and his petition for post-conviction
> relief was accordingly, dismissed.

ECF No. 13-5 at 40-42.

The Superior Court, affirmed, and essentially found that Petitioner did not establish prejudice. ECF No. 13-6 at 39. Petitioner has failed to establish that the State Courts' adjudication of his claim was contrary to or an unreasonable application of then extant Supreme Court precedent. Nor has he established that the State Courts' factual determinations were unreasonable. Accordingly, he has failed to show entitlement to any relief for Issue VIII, i.e., the ineffective assistance of counsel claim, regarding Petitioner's absence from the in-chambers hearing.[10]

Alternatively, even if we were to address the underlying issue on the merits, i.e., whether Petitioner had a constitutional right to be present at the in-chambers hearing, we would deny relief for either of two independent reasons. First, the PCRA Court stated that "while there is no record of this particular proceeding, [i.e., the in-chambers hearing], this Court's recollection is that Tennyson, his counsel and the district attorney were present with the juror at the time the

_____

[10] This Court agrees with the State Courts and finds Petitioner failed to meet his burden to establish the ineffective assistance of either his trial and/or his direct appeal counsel. Accordingly, we find that Petitioner failed to establish "cause" in the form of ineffective assistance so as to excuse his procedural default of the underlying issue. We also conclude that Petitioner cannot establish a miscarriage of justice should this Court refuse to excuse the procedural default. Accordingly, having procedurally defaulted the underlying issue of his absence from the in-chambers hearing, which allegedly violated his rights to fundamental fairness, and, having failed to carry his burden to show cause and prejudice or to show a miscarriage of justice, this Court is precluded from addressing the underlying issue on the merits.

juror explained his concerns. . . ." ECF No. 13-5. We conclude this is a factual finding that Petitioner **was** present at the in-chambers hearing, contrary to Petitioner's contention that he was not. Petitioner has not rebutted this factual finding and we can therefore deny relief on this ground alone.

In the alternative, however, even if he were not present, we would hold that Petitioner did not have a federal constitutional right to be present at the in-chambers hearing and hence, counsel could not be ineffective for failing to assure his presence there. See, e.g., United States v. Gagnon, 470 U.S. 522 (1985); United States v McCoy, 8 F3d 495, 496-97 (7th Cir. 1993) ("The defendant also has a due process right to be present 'whenever his presence has a relation, reasonably substantial, to the fulness of his opportunity to defend against the charge.' *Gagnon*, 470 U.S. at 526 . . . But 'the presence of a defendant is a condition of due process to the extent that a fair and just hearing would be thwarted by his absence, and to that extent only.' *Id.* . . . That determination is made in light of the record as a whole.")

In Gagnon, the Supreme Court found that defendants' due process rights were not violated when they were excluded from an in camera conference between the judge, defense counsel and a juror regarding the juror's possible bias. The Court based its holding on the fact that the defendants "could have done nothing had they been at the conference, nor would they have gained anything by attending." Id. at 527. Here, Petitioner has not shown that his absence affected the State Trial Court's ability to decide the issue or otherwise diminish Petitioner's ability to defend against the charges, and that his counsel's presence did not adequately protect Petitioner's interests at the in-chambers hearing. See United States v McCoy, 8 F3d at 497 ("In *Shukitis*, we similarly held that a defendant's due process rights were not implicated when he was excluded from an in camera conference that addressed a separation of witnesses order. We

reasoned that the absence did not affect the court's ability to decide the issue or otherwise diminish Shukitis' ability to defend against the charges, and that Shukitis' interests were adequately protected by his counsel's presence at the conference.").  See also United States v. Smith, 186 F.3d 290, 296 (3d Cir. 1999)("A defendant's presence is a condition of due process, however, only 'to the extent that a fair and just hearing would be thwarted by his absence.'"), *overruling on other grounds by regulation recognized in*, United States v. Binkley, 38 F.App'x 814, 815 n.1 (3d Cir. 2002).  In other words, Petitioner has utterly failed to carry his burden to show that he suffered any prejudice from his absence at the in-chambers hearing.  See, e.g., United States v. Smith, 186 F.3d at 296 ("In the final analysis, defendants have failed to show that they were prejudiced by this pre-trial meeting. The unavoidable conclusion is that their presence would not have contributed anything. . . . On this record, we fail to see how this meeting deprived defendants of a fair trial and, accordingly, find no reversible error.").  Here, Petitioner has failed to show any prejudice from his absence.  At the very least, the foregoing cases establish that the State Courts' adjudication of his claim was not contrary to or an unreasonable application of then extant Supreme Court precedent.  Thus, in light of Gagnon, and United States v. Smith, we reject Petitioner's argument that his absence from the in-chambers hearing constituted some sort of structural error, where prejudice should be presumed.[11] Accordingly, this issue does not merit relief.

---

[11] Petitioner does argue that he was prejudiced because, had he been at the in-chambers hearing, he could have told the trial court himself that he wanted a mistrial.  ECF No. 2 at 37. Notwithstanding the fact that the State Court's did not credit Petitioner's assertion that he wanted a mistrial, there is no reason why he could not have himself requested a mistrial when, after the in chambers hearing, he saw the trial continue without the alternate juror.  His non-presence at the in-chambers hearing did not preclude him from requesting a mistrial, especially given he was well aware of how to request a mistrial, because a mistrial was already granted in the first trial of this case, necessitating the second trial wherein he was convicted.

Next, we take up Petitioner's claim that his trial counsel was ineffective for not calling Ms. L. Green to testify, who was the woman at the bar, who, according to the Trial Court, was the woman that Petitioner was trying to impress. Petitioner argues before this Court that Ms. Green would have corroborated his version of the events and was the only witness who would have done so and, as such, was critical for his defense. ECF No. 2 at 35 to 36. The Respondents point out that Petitioner never raised this issue in the State Courts and accordingly, he has procedurally defaulted this claim. ECF No. 13 at 15 to 16; 20 to 21. We agree with the Respondents that Petitioner has procedurally defaulted this claim because he failed to present this claim in his direct appeal and/or during his PCRA proceedings.[12] Having never presented this claim to the State Courts, and not being able to do so now, given the Pennsylvania State law on waiver and the one year statute of limitations on PCRA petitions, both of which are independent and adequate State law rules of procedure,[13] we find that Petitioner has procedurally

---

[12] We previously listed the issues Petitioner raised in his direct appeal and none of those issues concerned the testimony of Ms. Green. Nor do any issues raised in the PCRA appeal concern the testimony of Ms. Green. The issues Petitioner raised in his appeal to the Superior Court from the denial of his PCRA petition are as follows:

> 1. Did the lower Court err when it dismissed Appellant's amended petition for post-conviction relief for ineffectiveness of trial counsel for failing to request a mistrial when trial counsel knew or should have known that the [alternate] juror who was seated knew or was related to the victim's family?
> . . . .
> 2. Was trial counsel ineffective by failing to have the Appellant present during the conference to excuse the above mentioned [alternate] juror?
> . . . .
> 3. Did the lower Court err when it dismissed the Appellant's allegations of ineffectiveness of [direct] appellate counsel for failing to preserve this matter [i.e., the matter of the alternate juror] for appeal?

ECF No. 13-6 at 7.

[13] See, e.g., Barrett v. Patrick, 2006 WL 2077019, at *6 n.7 (W.D.Pa., July 24, 2006) ("Pennsylvania applies a rule of waiver in multiple contexts. An issue not raised at trial or on appeal is waived. Moreover, Pennsylvania's rule of waiver for failing to raise an issue on appeal

defaulted his claim. Because Petitioner has not shown, as is his burden,[14] cause and prejudice[15] to excuse the default of this claim, nor has he established a miscarriage of justice,[16] this claim cannot be addressed on the merits and thus, cannot serve to afford Petitioner relief from his first degree murder conviction.

Because none of the issues Petitioner raises in his habeas petition merits the grant of relief, the petition must be denied.

---

is 'independent' of any federal law question.") (citations omitted); Abbott v. Gigliotti, No. 08-1310, 2010 WL 411830, at *3 (W.D.Pa. Jan. 28, 2010) (same); Driver v. Beard, 2010 WL 3655897, at *24 (E.D.Pa., Aug. 11, 2010) ("the PCRA's one-year statute of limitations which prevents petitioner from filing a PCRA petition at this point in time, 42 Pa. Cons.Stat. Ann. § 9545(b)(1), also is an adequate and independent ground for precluding federal habeas review.").

[14] Bousley v. U.S., 523 U.S. 614, 626-27 (1998) (Stevens, J., concurring in part and dissenting in part) ("The Government charges petitioner with 'procedural default' because he did not challenge his guilty plea on direct appeal. The Court accepts this argument and therefore places the burden on petitioner to demonstrate either 'cause and prejudice' or 'actual innocence.'"); Ross v. Attorney General of State of Pennsylvania, No. 07-97, 2008 WL 203361, at *6 n.10 (W.D.Pa., Jan. 23, 2008).

[15] The only apparent claim of cause would be a claim of the ineffectiveness of his PCRA counsel for failing to raise this issue as a claim of ineffectiveness of trial or direct appeal counsel for failing to raise this issue. But, a claim of ineffective assistance of PCRA counsel cannot serve as "cause" to excuse a procedural default because Petitioner had no federal constitutional right to counsel at the PCRA stage of the proceedings. Coleman v. Thompson, 501 U.S. 722, 757 (1991) ("Because [the petitioner] had no right to counsel to pursue his appeal in state habeas, any attorney error that led to the default of [his] claims in state court cannot constitute cause to excuse the default in federal habeas."); Hull v. Freeman, 991 F.2d 86, 91 (3d Cir. 1993) ("Under Coleman, ineffective assistance of post-conviction counsel cannot constitute 'cause' because the Sixth Amendment does not entitle a defendant to post-conviction counsel").

[16] There is no new evidence of his actual innocence so as to establish a miscarriage of justice. Amrine v. Bowersox, 238 F.3d at 1029; Hubbard v. Pinchak, 378 F.3d at 340. Even if there were no requirement for "new evidence" to establish a miscarriage of justice, Petitioner could not, on this record, establish a miscarriage of justice, as it is clear that he shot the victim and we have already found sufficient evidence of intent so as to qualify the killing as being first degree murder. Petitioner is not "actually innocent" of the first degree murder.

### D. Certificate of Appealability

A certificate of appealability ("COA"), which is a prerequisite for allowing an appeal to a Court of Appeals, should not be issued unless the petitioner "has made a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253 (c)(2). A "substantial showing" requires a habeas petitioner to show that "jurists of reason would find it debatable whether the petition states a valid claim of the denial of a constitutional right[.]" Slack v. McDaniel, 529 U.S. 473, 484 (2000). See also Walker v. Government of The Virgin Island, 230 F.3d 82, 89-90 (3d Cir. 2000).

Applying this standard to the instant case, the court concludes that jurists of reason would not find it debatable whether the petition fails to state a valid claim of the denial of a constitutional right. Accordingly, a certificate of appealability should be denied.

Accordingly, the following order is entered:

AND NOW, this 24th day of January 2011, the habeas petition is hereby **DENIED**, as is a Certificate of Appealability.

**Petitioner is advised that he has the right for thirty (30) days to file a notice of appeal from our order denying his petition, see 28 U.S.C. § 2253(a); Fed. R.App. P. 4(a)(1)(A), and that our denial of a certificate of appealability does not prevent him from doing so, as long as he also seeks a certificate of appealability from the court of appeals. See Federal Rule of Appellate Procedure 22(b)(1).**

_____
Lisa Pupo Lenihan
Chief U.S. Magistrate Judge

cc:
Juantez Tennyson - EF-7297
SCI DALLAS
1000 Follies Road
Dallas, PA 18612

Counsel of Record via CM-ECF